IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Robert Louis Garrett, Jr., | ) | C/A No. 0:18-1417-CMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER AND** |
| Randall Fowler, Jr.; Lasley; DeGeorgis; | ) | **REPORT AND RECOMMENDATION** |
| Wantonta Golden; Jeff Bilyeu; R. Blackburn; | ) | |
| Kenneth Myers; James Jennings; Nathan | ) | |
| Rice; Christopher Monaco; Sgt. Campbell; Lt. | ) | |
| Rendell Berry, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Robert Louis Garrett, Jr., a self-represented state prisoner, filed this civil rights action pursuant to 42 U.S.C. § 1983. Garrett filed this action *in forma pauperis* under 28 U.S.C. § 1915 and § 1915A. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the motion for summary judgment filed by Defendants Fowler, Lasley,[1] DeGeorgis, Golden, Bilyeu, Blackburn, Myers, Jennings, and Rice (ECF No. 269), and the motion for summary judgment filed by Defendant Berry (ECF No. 333). Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Garrett of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motions. (ECF Nos. 270 & 334.) Garrett moved for and was granted numerous, lengthy extensions of time in which to file a response to the first motion for summary judgment. (See, e.g., ECF Nos. 275, 281, 297, 312, 314, 315, 321, 322.) In its September 4, 2020 order, the court warned Garrett that this action may be dismissed for

---

[1] Although this defendant is not included in the caption of counsel's motion, the body of the pleading clearly addresses summary judgment on behalf of this defendant. (See Defs.' Mem. Supp. Summ. J., ECF No. 269-1 at 5.)

failure to prosecute or may be decided on the record presented in support of the defendants' motion if Garrett failed to file a response. (ECF No. 322.) Despite having had over eight months in which to do so, Garrett has failed to file any response within the court's deadlines to the motion for summary judgment filed by Defendants Fowler, Lasley, DeGeorgis, Golden, Bilyeu, Blackburn, Myers, Jennings, and Rice.[2] Additionally, Garrett has failed to file any response to Defendant Berry's summary judgment motion. However, the allegations of his Amended Complaint are verified under penalty of perjury, so the court considers the factual allegations contained therein as an affidavit in opposition to the defendants' motions. See Goodman v. Diggs, ___ F.3d ___, 2021 WL 280518 (4th Cir. Jan. 28, 2021) ("[A] verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge.") (quoting William v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991)). Accordingly, having reviewed the record presented and the applicable law, the court concludes that the summary judgment motion filed by Defendants Fowler, Lasley, DeGeorgis, Golden, Bilyeu, Blackburn, Myers, Jennings, and Rice should be granted in part and denied in part, and Defendant Berry's motion for summary judgment should be granted.

---

[2] Garrett filed another motion requesting an extension of time on November 9, 2020. (ECF No. 328.) In his motion, Garrett maintains that extraordinary circumstances warrant additional time because the defendants refuse to turn over critical discovery material and because he still does not have adequate access to the law library and typewriter. The issue regarding discovery in this matter has been fully litigated and resolved as of June of 2020. Additionally, Garrett has provided the court with hundreds of pages of written pleadings in his federal cases, so it is unclear how the lack of access to a typewriter is critical for Garrett's filing a response to the defendants' motions. Furthermore, Garrett concedes that he has some access to the law library, but argues that it is insufficient. All of these arguments fail to show the extraordinary circumstances or good cause necessary to warrant yet another extension of Garrett's deadlines. Accordingly, Garrett's motion for an extension of time is denied.

## BACKGROUND

The following facts are either undisputed or are taken in the light most favorable to Garrett, to the extent they find support in the record.[3]  Garrett alleges, by way of background, that while he was housed at Perry Correction Institution ("PCI"), Defendant Fowler began harassing Garrett in a sexual manner sometime between May and June 2015.  (Am. Compl. ¶¶ 43-47, ECF No. 231 at 5.)  Garrett complained about Fowler's behavior to Fowler's supervisors, Defendants Blackburn and Bilyeu; and by writing and submitting a Request to Staff ("RTS") to Defendants Golden, Blackburn, and Bilyeu.  (Id. ¶¶ 47-48, ECF No. 231 at 5-6.)  Golden delivered Garrett's RTS to Defendant Lasley, and Garrett alleges that Fowler then stopped harassing him.  (Id. ¶ 49, ECF No. 231 at 6.)

Garrett alleges that on or around June 19, 2015, Defendants Bilyeu and Blackburn were collecting dinner trays from inmates, but came up short one or two trays.  (Id. ¶¶ 51-52, ECF No. 231 at 5-6.)  When Blackburn approached Garrett's cell and inquired about missing trays, Garrett reminded Blackburn that he was not allowed to receive hard trays due to his past transgressions (including breaking a tray and putting feces on a tray and throwing it through his food service flap).  (Id.)  Blackburn informed Garrett that officers would need to search his cell for the missing trays, which Garrett interpreted as harassment.  (Id. ¶ 53.)  Garrett admits that he refused to allow officers to search his cell even though he know that this would result in a cell extraction, that he

---

[3] Garrett's initial Complaint filed in C/A No. 0:18-1309 contains allegations against numerous defendants spanning a large period of time and occurring at several different South Carolina Department of Corrections ("SCDC") facilities.  In its May 24, 2018 Order, the court determined that Garrett's claims should be severed into four civil actions.  (See ECF No. 1.) Accordingly, only Garrett's allegations against Fowler, Lasley, DeGeorgis, Golden, Bilyeu, Blackburn, Myers, Jennings, and Rice regarding an incident that occurred on June 19 or 20, 2015 at Perry Correctional Institution are relevant to the instant civil action.  (Id. at 2.)  Garrett later filed a verified Amended Complaint that contains only the allegations specific to this civil action and that added Defendants Monaco, Campbell, and Berry.  (ECF No. 231.)

was "willing to make a stand," and that he "wanted to hurt them just a little." (Id. ¶ 57, ECF No. 231 at 7.) Garrett also acknowledges that when the extraction crew and camera appeared, he yelled that the search was in retaliation for Garrett filing sexual harassment charges against Defendant Fowler. (Id. ¶ 58.) Garrett alleges that he was sprayed with an excessive amount of chemical munitions by Defendant Blackburn and that Defendants Fowler, Rice, Bilyeu, Myers, and Jennings were holding him down and using various pressure point techniques to attempt to restrain him when one of the officers sexually assaulted him by using either a hand or handcuffs to "probe [his] anus." (Id. ¶¶ 58-60, 70, ECF No. 231 at 7, 9.) Garrett alleges that when this sexual violation occurred, he immediately stopped resisting but was then violated a second time. (Id. ¶¶ 60-61, ECF No. 231 at 7-8.) Garrett alleges that he was taken to the medical department and was also taken to the hospital where medical personnel administered a rape test kit. (Id. ¶¶ 63-64, ECF No. 231 at 8-9.) Garrett summarily alleges that he was denied medical care following this incident. (Id. ¶ 77, ECF No. 231 at 10.) He further alleges that the entire incident was in retaliation for Garrett's exercising his First Amendment right to file charges regarding being sexually harassed by Fowler. (Id. ¶ 68, ECF No. 231 at 9.)

The court construed Garrett's Amended Complaint as alleging only claims pursuant to 42 U.S.C. § 1983 for excessive force, deliberate indifference, and retaliation. (Order, ECF No. 241 at 1.) No party challenged this construction of the claims. Garrett seeks monetary and injunctive relief. (Am. Compl., ECF No. 231 at 11.)

## DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate.  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322.  Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Erickson v. Pardus, 551 U.S. 89 (2007), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

### B.     Defendant Campbell

The court issued an order on November 6, 2019, authorizing the issuance and service of process on Defendant Campbell and directing the United States Marshals Service to serve the Summons and Amended Complaint, as Plaintiff was granted leave to proceed *in forma pauperis*. (ECF No. 241); <u>see</u> Fed. R. Civ. P. 4(c)(3); 29 U.S.C. § 1915(d).  The court's order stated that "[i]f the information provided by Plaintiff . . . is not sufficient for the Marshal to effect service of process, . . . the Marshal should so note in the 'Remarks' section at the bottom of the Form USM-285." (ECF No. 191 at 2.)  Plaintiff was also specifically advised that "[p]laintiff must provide, and is responsible for, information sufficient to identify the defendant," that "[t]he United States Marshal cannot serve an inadequately identified defendant," and that "**[u]nserved defendants may be dismissed as parties to this case.**" (<u>Id.</u>)  Review of the docket discloses that the summons for Defendant Campbell was returned unexecuted on December 17, 2019.  (ECF No. 249.)  The court issued an order on December 20, 2019 notifying Plaintiff that Defendant Campbell's summons was returned unexecuted, reminding him that he was responsible for providing information sufficient to identify this defendant, and directing him to complete a new Form USM-285 with information sufficient to identify or locate Defendant Campbell.  (ECF No. 250 at 1.) Although Plaintiff returned a USM-285 form, he did not comply with the court's order to provide more accurate information as to Defendant Campbell.  Accordingly, the court issued an order on March 12, 2020 declining to authorize additional attempted service on Defendant Campbell at that time.  (ECF No. 282.)

Pursuant to Federal Rule of Civil Procedure 4(m), service of process generally must be effected on a defendant within ninety days of filing the Complaint.  In this case, over ninety days has passed since the issuance of the initial order directing service of process.  <u>See</u> <u>Robinson v.</u>

Clipse, 602 F.3d 605, 608-09 (4th Cir. 2010) (tolling the time period for service during initial review). After review of the returned summons, the court concludes that the investigative efforts of the United States Marshals Service were reasonable. See Greene v. Holloway, No. 99-7380, 2000 WL 296314, at *1 (4th Cir. 2000) (citing with approval Graham v. Satkoski, 51 F.3d 710 (7th Cir. 1995)). Plaintiff failed to follow the court's instructions by providing more accurate information for Defendant Campbell, as is his responsibility. See, e.g., Tharrington v. Armor Corr. Health Care, C/A No. 3:19CV338, 2020 WL 5834417, at *3 (E.D. Va. Sept. 30, 2020) ("Plaintiff, not the Court, nor the United States Marshal's service, nor the attorney for another party, is responsible for providing the appropriate addresses for serving a Defendant."). Accordingly, the court determines that Defendant Campbell has not been properly served within the applicable time period. Plaintiff's claims against this defendant should therefore be dismissed without prejudice pursuant to Rule 4(m).

## C.     Garrett's Claims

As described above and as identified by the court, Garrett raises claims of excessive force against the defendants regarding an incident that occurred on or about June 19, 2015 at PCI. Specifically, Garrett alleges that a forced cell extraction was authorized by Defendants DeGeorgis and Lasley, that Defendant Blackburn sprayed Garrett with an excessive amount of chemical munitions immediately prior to the forced cell extraction, and that Defendants Fowler, Rice, Bilyeu, Myers, and Jennings used excessive force during the cell extraction. (Am. Compl. ¶¶ 70-72, ECF No. 231 at 9-10.) Additionally, Garrett alleges that, during the cell extraction, one of the officers sexually assaulted him, but Garrett admits that he cannot identify which officer. (Id. ¶¶ 61-62, ECF No. 231 at 7-8.) Garrett also generally alleges that Defendant Golden did not take the necessary steps to prevent the assault from occurring. (Id. ¶ 69, ECF No. 231 at 9.) Garrett further

claims that the defendants were deliberately indifferent to his mental and physical health as a result of this incident.  (Id. ¶¶ 77, 80, ECF No. 231 at 10.)  Garrett alleges that the excessive force incident described above was in retaliation for Garrett's filing charges against Defendant Fowler for sexually harassing him.  (Id. ¶ 68, ECF No. 231 at 9.)

The defendants do not attach any evidence in support of their motions for summary judgment.[4]  And, as stated above, Garrett failed to file any response to the defendants' motions, but the Amended Complaint is verified.  The parties' failures in these regards have greatly hindered the court's consideration of the defendants' motions.

### 1.    Defendants Berry and Monaco

Although Garrett added Defendants Berry and Monaco via an amendment to his complaint, the court concludes that Garrett's Amended Complaint fails to state a claim against them upon which relief can be granted.[5]  The Amended Complaint fails to allege any facts about these defendants that would show that they had any involvement in the purported constitutional violations construed by the court.  See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) (providing that a plaintiff in a § 1983 action must plead that the defendant, through his own individual actions, violated the Constitution); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) ("In order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.' ")  Rather, Garrett mentions these defendants in his Amended Complaint only once, in passing, regarding spoliation of his legal files, noting that he "will write a separate Supplemental Complaint" regarding these defendants to "provide details."

---

[4] Although the defendants' memorandum generally references an "Exhibit A" of Garrett's medical records (ECF No. 269-1 at 2), no such exhibit was attached to the defendants' motion.

[5] See 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1) (authorizing summary dismissal if the complaint fails to state a claim upon which relief may be granted).

(Am. Compl. ¶ 72, ECF No. 231 at 10.)  Garrett did not file—or move for leave to file—a supplement to his Amended Complaint.

Accordingly, Defendant Monaco should be summarily dismissed pursuant to § 1915 and § 1915A for failure to state a claim upon which relief can be granted, and Defendant Berry's motion for summary judgment (ECF No. 333) should be granted.  See Hinton v. Dennis, 362 F. App'x 904, 907 (10th Cir. 2010) (affirming dismissal of a defendant where the defendant's name appeared in the caption but the plaintiff failed to make any factual allegations against this person or even identify the defendant's role in his claim).

### 2. Retaliation

An inmate has a First Amendment right to be free from retaliation by prison officials for filing a grievance.  Booker v. S.C. Dep't of Corr., 855 F.3d 533, 546 (4th Cir. 2017). "[A] First Amendment retaliation claim under § 1983 consists of three elements:  (1) the plaintiff engaged in constitutionally protected First Amendment activity, (2) the defendant took an action that adversely affected that protected activity, and (3) there was a causal relationship between the plaintiff's protected activity and the defendant's conduct." Id. at 537.  An inmate must allege facts showing that his exercise of a constitutionally protected right was a substantial factor motivating the retaliatory action.  See, e.g., Cochran v. Morris, 73 F.3d 1310, 1318 (4th Cir. 1996).

In the instant matter, the defendants acknowledge that Garrett raises claims of retaliation (see Defs.' Mem. Supp. Summ. J., ECF No. 269-1 at 1); however, the defendants do not otherwise address this claim in their memorandum.  Accordingly, as Defendants Fowler, Lasley, DeGeorgis, Golden, Bilyeu, Blackburn, Myers, Jennings, and Rice do not appear to have moved for summary judgment as to any retaliation claims, these claims should proceed against these defendants.

3.      **Eighth Amendment—Excessive Force**

a.      **Excessive Force Generally**

The Eighth Amendment to the United States Constitution expressly prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  To proceed with his claim under the Eighth Amendment, the plaintiff must demonstrate:  (1) objectively, the deprivation suffered or injury inflicted was "sufficiently serious," and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind."  Farmer v. Brennan, 511 U.S. 825, 834 (1994); Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).  "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.' "  Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (citing Wilson v. Seiter, 501 U.S. 294, 298-300 (1991)).  "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.' "  Williams, 77 F.3d at 761 (quoting Hudson v. McMillian, 503 U.S. 1, 5 (1992)).

The "core judicial inquiry" in an excessive force claim under the Eighth Amendment is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' "  Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (quoting Hudson, 503 U.S. at 7).  "[N]ot . . . every malevolent touch by a prison guard gives rise to a federal cause of action."  Hudson, 503 U.S. at 9.  However, the objective component is "contextual and responsive to 'contemporary standards of decency.' "  Id. at 8 (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)).  Accordingly, "the extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation,"

and it may also provide an indication of the amount of force that was applied.  <u>Wilkins</u>, 559 U.S. at 37 (quoting <u>Hudson</u>, 503 U.S. at 7).  In an excessive force analysis, "[w]hen prison officials maliciously and sadistically use force to cause harm, . . . contemporary standards of decency always are violated . . . whether or not significant injury is evident.  Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury."  <u>Wilkins</u>, 559 U.S. at 37 (quoting <u>Hudson</u>, 503 U.S. at 9).

When analyzing the subjective element of excessive force claims, courts must determine if the defendant showed "wantonness in the infliction of pain."  <u>Whitley v. Albers</u>, 475 U.S. 312, 322 (1986).  To that end, they should consider factors such as (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied.  <u>Id.</u> at 321.  Courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve internal order and discipline and to maintain institutional security."  <u>Id.</u> at 321-22.  The Supreme Court has recognized that prison officials work in an environment where there is an ever present potential for violence and unrest, and that courts should not substitute their judgment for that of the officials who must make a choice at the moment when the application of force is needed.  <u>Id.</u>  The deference owed to prison administrators extends to "prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline."  <u>Id.</u> at 322.

The United States Court of Appeals for the Fourth Circuit has addressed the use of chemical munitions in a prison setting. See Williams v. Benjamin, 77 F.3d 756 (4th Cir. 1996); Bailey v. Turner, 736 F.2d 963, 969 (4th Cir. 1984). In Bailey, the Fourth Circuit held that as long as the quantity of mace used is commensurate with the gravity of the occasion, its use does not violate the Constitution. Specifically, the Bailey Court held that prison officials may use mace to compel the obedience of a recalcitrant prisoner. Bailey, 736 F.2d at 969-70. The Bailey Court found that the Eighth Amendment afforded prison officials the discretion to use mace on inmates to compel them to abide by prison rules, even if they did not pose an immediate physical threat. Id. Whether the use of chemical munitions on an inmate constitutes excessive force depends upon "the totality of the circumstances, the provocation, the amount of gas used, and the purposes for which the gas was used." Id. at 969. Furthermore, the Fourth Circuit has stated that "[a] limited application of mace may be much more humane and effective than a flesh to flesh confrontation with an inmate" and "because a limited use of mace constitutes a relatively mild response compared to other forms of force, the initial application of mace indicates a tempered response by the prison officials." Williams, 77 F.3d at 763 (internal quotations marks and citation omitted).

**b.    Garrett's Claims**

Regarding his claims of excessive force, Garrett alleges that during a forced cell extraction, he was sprayed with an excessive amount of chemical munitions by Defendant Blackburn. He further alleges that Defendants Fowler, Rice, Bilyeu, Myers, and Jennings were holding him down and using various pressure point techniques to attempt to restrain him when one of the officers sexually assaulted him by using either a hand or handcuffs to "probe [his] anus." (Am. Compl ¶¶ 58-60, 70, ECF No. 231 at 7, 9.) Garrett alleges that when this sexual violation occurred, he

immediately stopped resisting but was then sexually violated a second time.  (Id. ¶¶ 60-61, ECF No. 231 at 7-8.)

Examining the facts in the record and applying the Whitley factors, the court concludes on the record presented that no reasonable jury could find that the use of chemical munitions by these defendants violated the Eighth Amendment.  Importantly, as admitted by Garrett in his Amended Complaint, just prior to the forced cell extraction Garrett refused the officers' directives to allow his cell to be searched and yelled at the officers.  Garrett also admits that he intentionally resisted the officers' attempts to restrain him and that he "wanted to hurt them."  (Am. Compl. ¶ 57, ECF No. 231 at 7.)  Other unrefuted evidence in the record shows that Garrett refused multiple directives to remove paper that he had used to cover his cell windows and refused directives to come to the cell door to be restrained.  (Mgmt. Info. Notes, ECF No. 2-3 at 28-30, 106.)  Thus, the only reasonable conclusion on this record is that Garrett's repeated noncompliance and recalcitrant behavior necessitated the use of force.  See Whitley, 475 U.S. at 321; Bailey, 736 F.2d at 969-70; Brown v. Eagleton, C/A No. 4:14-cv-357-BHH, 2015 WL 5781504 (D.S.C. Sept. 30, 2015) (rejecting the argument that "prison officials may not use mace or chemical munitions on disruptive prisoners who are locked in a cell and may only use write ups and the loss of privileges to secure compliance and maintain discipline").

In his Amended Complaint, Garrett suggests that the amount of chemical munitions deployed demonstrates that the defendants used excessive force.  As stated above, the use of chemical munitions by prison officials is not a violation of a prisoner's constitutional rights when used appropriately.  See Williams, 77 F.3d at 763.  In examining the second factor under Whitley, the court observes that, though the total amount in this case is not small, the unrefuted record before the court shows that Garrett was given multiple opportunities to comply with directives and

that he refused to comply.  (See Mgmt. Info. Notes, ECF No. 2-3 at 28-30, 106); cf. Arnold v. South Carolina Dep't of Corrs., C/A No. 9:13-1273-JMC, 2014 WL 7369632, at *6 (D.S.C. Dec. 29, 2014) (concluding that the use of fogger to disperse multiple bursts of chemical munitions was not excessive when considering the arguments and evidence presented and the Whitley factors). Significantly, there is no evidence in the record—nor does Garrett allege—that any application of chemical munitions continued after he had been restrained.  Accordingly, under the circumstances presented here, the only reasonable inference is that multiple bursts of chemical munitions were rendered in repeated attempts to restore order and institutional security rather than maliciously or sadistically to cause harm.  See Whitley, 475 U.S. at 322; Bailey, 736 F.2d at 969-70.

Examining the extent of injury actually inflicted, it is undisputed that Garrett was treated by medical personnel shortly after the incident.  Notably, none of the injuries about which Garrett complains was proximately caused by the deployment of chemical munitions; rather, Garrett alleges that the injuries he sustained were incurred during the forced cell extraction.  (Am. Compl. ¶ 80, ECF No. 231 at 10.)  Accordingly, applying both the Whitley and Bailey factors, the court concludes that no reasonable jury could find that Defendant Blackburn's use of chemical munitions was not a good faith effort to restore and maintain prison discipline when faced with a recalcitrant prisoner but rather was used maliciously and sadistically to cause physical harm.  See Wilkins, 559 U.S. at 37; see also Whitley, 475 U.S. at 321-22; Bailey, 736 F.2d at 969-70; Williams, 77 F.3d at 763.

Garrett also alleges that the cell extraction team used excessive force against him when removing him from his cell and attempting to restrain him.  Specifically, Garrett alleges in his Amended Complaint that the team applied "various pressure points . . . on his body," put elbows and knees on the back of his neck, twisted one of his toes, grabbed his genital area, and did "all

types of things to try and get [Garrett's] right hand behind his back with his left hand." (Am. Compl. ¶¶ 59-60, ECF No. 231 at 7.)

Notably, Garrett concedes that he was resisting and fighting the officers during the cell extraction and stopped only when the alleged sexual assault occurred (discussed in more detail, below). (Id. ¶¶ 57, 59-60.) Again applying the Whitley factors to the version of events presented by Garrett and the unrefuted record, the court concludes that the defendants are entitled to summary judgment on this claim. Indisputably, the need for force was great in light of Garrett's refusals of the officers' directives and Garrett's admitted resistance. Additionally, the extent of the threat to the safety of the officers during the cell extraction was high, both in light of Garrett's contemporaneous behavior in resisting and his admitted past history of violence and recalcitrance. (See id. ¶¶ 51, 54-55, 57, ECF No. 231 at 6-7.) Moreover, the unrefuted evidence shows that the defendants began their use of force by administering chemical munitions rather than a flesh-to-flesh confrontation, then graduated the force employed to an extraction team in light of Garrett's lack of compliance, demonstrating the defendants' efforts to temper the severity of the force applied. Finally, although the defendants do not provide the court with Garrett's medical records, Garrett admits in his Amended Complaint that he received medical care following the incident, including "an assortment of medications" for his physical and mental injuries, as well as therapy regarding the alleged sexual assault. (Id. ¶¶ 62-65, 80, ECF No. 231 at 8-9, 11.) Accordingly, examining the totality of the undisputed circumstances, the court concludes that no reasonable jury could find that the defendants' use of physical force to extract Garrett from his cell was not commensurate with the reasonably perceived threat posed by Garrett, or was done wantonly to inflict pain and was not applied in a good faith effort to restore order. See Whitley, 475 U.S. at 321-22; Bailey, 736 F.2d at 969-70; Williams, 77 F.3d at 763.

Garrett also alleges that, while the forced cell extraction team was attempting to restrain him, one of the officers sexually assaulted him by "running their hand or the end of some handcuffs between the crease of [his] buttocks, pushing until they probed [his] anus." (Id. ¶ 60.)  Garrett expressly concedes that he is unable to identify which officer committed the alleged assault.[6]

The defendants argue that because Garrett cannot identify which of the five officers involved in the cell extraction sexually assaulted him, he cannot establish a § 1983 claim.  The law is clear that personal participation of a defendant is a necessary element of a § 1983 claim against a government official in his or her individual capacity.  Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001).  However, when analyzing similar situations where multiple officers are involved in an incident where an alleged constitutional violation occurs but the plaintiff cannot identify which officer actually committed the violation, courts have found that the claim may still proceed to a jury.  For example, in Brown v. Prince George's Cty., MD, C/A No. DKC 07-2591, 2012 WL 3012573, at *6 (D. Md. July 20, 2012), the court observed:

> At its core, Defendants' argument is that Plaintiff must be able to identify the Defendant officers as his attackers to proceed past summary judgment.  There is, however, no support in the law for this bald conclusion.  Indeed, "the very presence of the officers at the scene [of an alleged assault] may constitute sufficient evidence for a jury to infer that the officers participated in an illegal beating that [is] shown to have occurred."  Segal v. Los Angeles Cnty., 852 F.2d 1290, 1988 WL 79481, at *2 (9th Cir. 1998) (unpublished opinion).  Applying this principle in analogous cases, courts throughout the country have repeatedly concluded that a "classic factual dispute to be resolved by the fact finder" exists in cases where a plaintiff cannot identify the police officers who beat him but those officers admit being in the vicinity at the time the beating allegedly occurred.  Smith v. Mensinger, 293

---

[6] The defendants argue that, in addition to Garrett's failure to identify the officer, following this incident Garrett filed a grievance that was investigated by the Division of Police Services.  The investigation, after reviewing videotape of the incident, determined that Garrett's allegations were unfounded.  (See generally Defs' Mem. Supp. Summ. J., ECF No. 8-9, ECF No. 269-1 at 8-9; citing ECF No. 2-3 at 1-30.)  While Garrett was charged with filing a false police report, it appears these charges were later dismissed.  (See ECF No. 2-3 at 1.)

F.3d 641, 650 (3d Cir. 2002); <u>Fogarty v. Gallegos</u>, 523 F.3d 1147, 1152-66 (10th Cir. 2008); <u>Summerlin v. Edgar</u>, 809 F.2d 1034, 1035-38 (4th Cir. 1987); <u>Rutherford v. City of Berkeley</u>, 780 F.2d 1444, 1448 (9th Cir. 1986), <u>abrogated on other grounds by</u> <u>Graham v. Connor</u>, 490 U.S. 386, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989).

(alterations in original). Similarly, in <u>McCaskill v. Wicomico Cty. Sheriff's Office</u>, C/A No. MJG-03-986, 2006 WL 8456539, at *2-3 (D. Md. June 2, 2006), <u>rev'd on other grounds sub nom.</u> <u>McCaskill v. Yankalunas</u>, 245 F. App'x 274 (4th Cir. 2007), the court stated:

> The Plaintiff stated in her deposition that, although she cannot recall who pushed her, when she "turned around to see who it was, it was Yankalunas and somebody else in a black mask . . ." McCaskill Dep. at 32. The Plaintiff's testimony provides evidence from which a reasonable jury could find that one or more of the four named Defendants threw her face down onto a mattress while she was five months pregnant. Three of the officers were wearing masks at the time, effectively depriving her of the ability to identify the officer who pushed her. Accordingly, the Court finds that summary judgment on the issue of personal participation is premature.

(omission in original). Although courts have granted summary judgment in other cases against multiple defendants when the plaintiff is unable to identify which defendant was responsible for the harm, summary judgment has generally been denied as long as the plaintiff provides specific testimony that the accused officers were present at the specific time the alleged violation occurred. And while mere presence is insufficient, if there is some evidentiary from which a jury could reasonably infer the individual involvement of specific officers, summary judgment is not appropriate. See <u>Smith v. Ray</u>, 855 F. Supp. 2d 569, 593-94 (E.D. Va. 2012), <u>aff'd</u>, 781 F.3d 95 (4th Cir. 2015) (collecting cases).

Here, the only evidence in the record is Garrett's verified statement that Defendants Fowler, Rice, Bilyeu, Myers, and Jennings personally participated in the cell extraction when the sexual assault allegedly occurred. Significantly, none of these defendant officers provided an

affidavit to the contrary or denied either that he was present at the time of the alleged assault or that he committed it. On this record, then, Garrett's claim must proceed.

However, to the extent Garrett attempts to raise claims of excessive force against any of the named defendants in their supervisory capacities, a claim based upon the doctrine of *respondeat superior* does not give rise to a § 1983 claim. Iqbal, 556 U.S. at 676; Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) ("In order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. The doctrine of *respondeat superior* has no application under this section.' ") (quoting Vinnedge v. Gibbs, 550 F.2d, 928 (4th Cir. 1977)). "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. Supervisory liability may attach under § 1983 if (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of a constitutional injury; (2) the supervisor's response to that knowledge was so inadequate as to show deliberate inference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the alleged constitutional injury. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). However, on this record, Garrett has failed to forecast evidence to reasonably permit such findings.

In summary, the defendants' motion for summary judgment should be granted as to Garrett's Eighth Amendment claims relating to the use of chemical munitions and physical force during the cell extraction, but denied as to the alleged sexual assault.

### 4.     Eighth Amendment—Deliberate Indifference to Medical Needs

Deliberate indifference by prison personnel to a prisoner's medical needs is actionable under the Eighth Amendment to the United States Constitution.  See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  To satisfy the subjective prong of an Eighth Amendment claim, an inmate must show that the prison official's state of mind was "deliberate indifference" to the inmate's health and safety.  Farmer, 511 U.S. at 834.  A prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk.  Id. at 847; Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004).  To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.  However, because even a subjective standard may be proven through circumstantial evidence, "a prison official cannot hide behind an excuse that he was unaware of a risk, no matter how obvious." Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015) (quoting Brice v. Va. Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995)).  Therefore, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that a risk was obvious." Makdessi, 789 F.3d at 133 (quoting Farmer, 511 U.S. at 842).

Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105.  To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).  Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983.  See Estelle, 429 U.S. at 106.  While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice.

Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks & citation omitted) (alterations in original); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Although Garrett generally alleges that following the June 19, 2015 incident the defendants were deliberately indifferent to his medical care, he does not provide any further details or name any specific defendants. As an initial matter, all of the named defendants are non-medical personnel. To establish a claim for denial of medical care against non-medical personnel, a prisoner must show that they failed to promptly provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier, 896 F.2d at 854. Because most prison officials are not trained medical personnel, they are entitled to rely on the opinions, judgment, and expertise of medical personnel concerning the course of treatment which the medical personnel deemed necessary and appropriate for the prisoner. See id.

As previously stated herein, the law is clear that personal participation of a defendant is a necessary element of a § 1983 claim against a government official in his or her individual capacity. Iqbal, 556 U.S. at 676; Trulock, 275 F.3d at 402; Wright, 766 F.2d at 850. Here, Garrett has failed to allege any facts that would show that the named defendants were personally involved in a purported constitutional deprivation with regard to his Eighth Amendment claim of deliberate

indifference to his medical needs.[7]  See Iqbal, 556 U.S. at 676.  Accordingly, the defendants are entitled to summary judgment as to this claim.

### 5.     Immunity

As explained above, the defendants have failed to demonstrate that they are entitled to summary judgment as to Garrett's claims of retaliation and Garrett's claim based on the alleged sexual assault.  To the extent the defendants subject to these claims argue generally that they are entitled to qualified immunity as to these incidents, they have failed to offer any specific support for this argument.  However, the defendants correctly argue that, to the extent that Garrett seeks monetary relief against them in their official capacities, as SCDC employees and arms of the state they are entitled to Eleventh Amendment immunity.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989) (holding that sovereign immunity protects both the state itself and its agencies, divisions, departments, officials, and other "arms of the State."); see also Quern v. Jordan, 440 U.S. 332, 343 (1979) (recognizing that Congress did not override the Eleventh Amendment when it created the remedy found in 42 U.S.C. § 1983 for civil rights violations).

### RECOMMENDATION

For the above reasons, the court recommends that the motion for summary judgment filed by Defendants Fowler, Lasley, DeGeorgis, Golden, Bilyeu, Blackburn, Myers, Jennings, and Rice be granted as to Garrett's allegations of deliberate indifference to medical needs and excessive force as it pertains to the use of chemical munitions and the forced cell extraction.  (ECF No. 269.)  The court further recommends that, except to the extent Garrett seeks monetary relief against the

---

[7] The court also observes that Garrett concedes that he was taken to the medical department following the incident of force, was taken to the hospital where he was administered a rape test, and was provided with an "assortment of medications" for his physical and mental injuries.  (Am. Compl. ¶¶ 63-64, 80, ECF No. 231 at 8-11.)  Such sworn statements belie Garrett's allegations that he was denied medical care such that a constitutional violation occurred.

defendants in their official capacities, the motion for summary judgment filed by Defendants Fowler, Lasley, DeGeorgis, Golden, Bilyeu, Blackburn, Myers, Jennings, and Rice be denied as to Garrett's allegations of retaliation.  (ECF No. 269.)  Likewise, as to Garrett's claim based on the alleged sexual assault, the defendants' motion should be denied as to Defendants Fowler, Rice, Bilyeu, Myers, and Jennings—except for any official capacity claims for damages—and granted as to the remaining defendants.  (ECF No. 269.)  Additionally, the court recommends that Garrett's claims against Defendant Campbell be dismissed without prejudice pursuant to Rule 4(m).  The court further recommends that claims against Defendant Monaco be summarily dismissed pursuant to § 1915 and § 1915A for failure to state a claim upon which relief can be granted.  Defendant Berry's motion for summary judgment (ECF No. 333) should be granted.

January 29, 2021                           Paige J. Gossett
Columbia, South Carolina               UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' "  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).